IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

L. RICHARD ALEVIZOS,

        Petitioner,

    v.

CHARLIE DANIELS, WARDEN,

       Respondent.

Civil No. 04-1791-BR

OPINION AND ORDER

     L. RICHARD ALEVIZOS
     Fed. Reg. No. 88963-198
     FCI Sheridan
     P.O. Box 5000
     Sheridan, OR  97378

        Petitioner *Pro Se*

     KAREN J. IMMERGUT
     United States Attorney
     District of Oregon
     CRAIG J. CASEY
     Assistant United States Attorney
     1000 S.W. Third Ave., Suite 600
     Portland, OR  97204

        Attorneys for Respondent

BROWN, Judge.

Petitioner, an inmate at FCI Sheridan, brings this Petition For Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 *pro se*.

## BACKGROUND

On March 9, 2004, Petitioner was convicted in the United States District Court for the District of Southern California on a charge of Bringing in an Illegal Alien Without Presentation. The trial judge sentenced Petitioner to twelve months plus one day of imprisonment, and two years of supervised release.

Petitioner does not challenge the legality of his conviction or sentence. Instead, Petitioner requests an order requiring Respondent to release him immediately to a halfway house or to allow him to complete his sentence on home confinement. In support of his request, Petitioner argues the Bureau of Prisons ("BOP") violated his right to equal protection under the Fourteenth Amendment by applying a different rule to allow earlier release to a halfway house to federal prisoners in the First and Eighth Circuits.

## LEGAL STANDARDS

Petitioner brings this action pursuant to 28 U.S.C. § 2241. To obtain relief under § 2241, Petitioner must establish that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(b)(3).

**DISCUSSION**

## I.   Exhaustion of Remedies

It is well settled that federal prisoners must exhaust their federal administrative remedies prior to filing a habeas corpus petition. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *see also Fendler v. United States Parole Com'n*, 774 F.2d 975, 979 (9th Cir. 1985). The exhaustion requirement is not, however, jurisdictional in § 2241 cases. *Rivera v. Ashcroft*, 394 F.3d 1129, 1139 (9th Cir. 2005). Rather, "[e]xhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or where the administrative proceedings themselves are void." *United Farm Workers of America v. Ariz. Agr. Emp. Rel. Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982) (citation omitted); *see also Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) (exhaustion waived where request for administrative remedy initially denied by Community Corrections Office based upon official BOP policy and further appeal would almost certainly have been denied based upon the same policy).

The record before this Court establishes that exhaustion of administrative remedies would be futile. By the time Petitioner exhausted every available administrative remedy, he may well have

completed his entire sentence.[1]  Accordingly, exhaustion is

excused in the circumstances of this case.

## II.  **Relief on the Merits**

Petitioner's claims arise from a change in the BOP's

interpretation of 18 U.S.C. §§ 3621(b) and 3624(c).  Section

3621(b) provides:

> (b) Place of imprisonment.--The Bureau of Prisons shall
> designate the place of the prisoner's imprisonment. The
> Bureau may designate any available penal or correctional
> facility that meets minimum standards of health and
> habitability established by the Bureau, whether
> maintained by the Federal Government or otherwise and
> whether within or without the judicial district in which
> the person was convicted, that the Bureau determines to
> be appropriate and suitable, considering--
>
>> (1) the resources of the facility contemplated;
>>
>> (2) the nature and circumstances of the offense;
>>
>> (3) the history and characteristics of the
>> prisoner;
>>
>> (4) any statement by the court that imposed the
>> sentence--
>>
>>> (A) concerning the purposes for which the
>>> sentence to imprisonment was determined to be
>>> warranted; or
>>>
>>> (B) recommending a type of penal or
>>> correctional facility as appropriate; and

---

[1]  Upon receipt of a formal written Administrative Remedy
Request on the appropriate form ("BP-9") from an inmate, the
Community Corrections Manager ("CCM") has 20 days to respond.  The
inmate then has 20 more dates to appeal to the Regional Director,
who has 30 days to respond.  If still dissatisfied, the inmate may
appeal to General Counsel within an additional 30 days, to which
the General Counsel has 40 days to respond.  See 28 C.F.R. § 542.

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another....

18 U.S.C. § 3621.

Section 3624(c) provides:

(c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624.

Prior to December 2002, the BOP interpreted these statutes to allow inmates to serve any or all of their terms of imprisonment in community correction center ("CCCs"). Under this interpretation, the BOP had a long-standing policy of transferring prisoners to CCCs to serve up to 180 days of the remainder of their sentences in an attempt to facilitate successful transition into the community.

On December 20, 2002, the BOP's Office of Legal Counsel concluded that this decades-long policy was wrong and that Section

3624(c) limited the discretion granted by Section 3621(b).  The
Office of Legal Counsel decided the maximum period of time a
prisoner can serve his sentence in a CCC in connection with pre-
release programming is the lesser of six months or ten percent of
the inmate's sentence after the deduction of good time credits.

Effective February 14, 2005, the BOP adopted an
administrative regulation codifying the December 2002 policy
statement at 28 C.F.R. § 570.20, which provides:

    (a)   This subpart provides the Bureau of Prisons'
        (Bureau) categorical exercise of discretion for
        designating inmates to community confinement.  The
        Bureau designates inmates to community confinement
        only as part of pre-release custody and programming
        which will afford the prisoner a reasonable
        opportunity to adjust to and prepare for re-entry
        into the community.

    (b)   As discussed in this subpart, the term "community
        confinement" includes Community Corrections Centers
        (CCC) (also known as "halfway houses") and home
        confinement.

A companion rule, 28 U.S.C. § 570.21, provides:

    (a)   The Bureau will designate inmates to community
        confinement only as part of pre-release custody and
        programming, during the last ten percent of the
        prison sentence being served, not to exceed six
        months.

    (b)   We may exceed these time-frames only when specific
        Bureau programs allow greater periods of community
        confinement, as provided by separate statutory
        authority (for example, residential substance abuse
        treatment program (18 U.S.C. § 3621(e)(2)(A)), or
        shock incarceration program (18 U.S.C. § 4046(c))).

The December 2002 change in policy spawned numerous legal challenges from inmates who previously would have been eligible for CCC placement at any time during their incarceration, including the last six months. *See Pinto v. Menifee*, 2004 WL 3019760 (S.D.N.Y. December 29, 2004) (summarizing the current legal landscape); *see also Franceski v. Bureau of Prisons*, 2005 WL 821703 (S.D.N.Y. April 8, 2005) (updated summary of conflicting case law).

As noted in *Pinto*, two circuit courts have addressed the merits of the December 2002 policy change, both invalidating the new policy on the grounds that BOP's interpretation of the statutes is erroneous. *See Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004) (holding BOP had discretion to transfer prisoners to community confinement at any time during their incarceration); *Goldings v. Winn*, 383 F.3d 17, 23-27 (1st Cir. 2004) (holding that § 3624(c) does not prohibit the BOP from transferring prisoners to a CCC prior to the lesser of six months or ten percent of the end of their prison terms, and that § 3621(b) confers upon BOP discretionary authority to execute such transfers).

Petitioner alleges Respondent violated his equal protection rights by failing to consider him for early release to a half-way house. He argues federal inmates incarcerated in the First and Eighth Circuits enjoy the benefit of the *Elwood* and *Golding*

decisions, while he does not.[2]  Contrary to Petitioner's argument, however, the BOP is not compelled by equal protection principles to acquiesce nationwide in the First and Eighth Circuits' decisions.  *Fristoe v. Thompson*, 144 F.3d 627 (10th Cir. 1998) (citing *Castillo-Felix v. INS*, 601 F.2d 459, 467 (9th Cir. 1979) (INS was not compelled by equal protection principles to obey holding of Second Circuit Court of Appeals outside the Second Circuit)).  "It is elementary that decisions of one Court of Appeals cannot bind another."  *Id.*

Moreover, even if Petitioner were entitled to application of the *Elwood*, *Golding*, or other decisions requiring Respondent to exercise discretion in determining transfer to a half-way house, he would not be entitled to the relief sought here, *i.e.*, an order requiring his immediate transfer.  *See Elwood*, 386 F.3d at 847 (inmate's immediate designation to a community corrections center is not mandated); *Cook v. Gonzales*, 2005 WL 773956 *4 (D. Or. 2005) (same).  Accordingly, Petitioner is not entitled to an order requiring his immediate transfer to a half-way house based upon a claim his equal protection rights have been violated.[3]

---

[2]  Respondent does not address Petitioner's equal protection claim in his Response.  Instead, Respondent focuses on a due process argument not raised in the Petition.

[3]  This case is distinguishable from other cases in this District in which relief was granted to inmates challenging the implementation of the new BOP regulations.  In *Cook v. Daniels*, CV 05-09-AS, and in *Haskey v. Daniels*, CV 05-249-AS, the Honorable

## CONCLUSION

For these reasons, the Court **DENIES** the Petition for Writ of Habeas Corpus.

IT IS SO ORDERED.

DATED this ___13th___ day of July, 2005.

_____/s/ Anna J. Brown_____
ANNA J. BROWN
United States District Judge

---

Donald C. Ashmanskas of this court granted habeas petitions in which the inmates alleged due process violations. Here, Petitioner alleged <u>only</u> an equal protection violation based upon implementation of case law in other circuits. The Petition cannot be construed as alleging a due process claim, upon which relief might be warranted.